**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**



**RODNEY EUGENE FENNER,**

Petitioner,

v.                                                           Civil Action No. **3:12CV856**

**COMMONWEALTH OF VIRGINIA,**

Respondent.

## MEMORANDUM OPINION

Rodney Eugene Fenner, a Virginia prisoner proceeding *pro se*, brings this petition for a

writ of habeas corpus under 28 U.S.C. § 2254. Fenner challenges his convictions in the Circuit

Court of the City of Norfolk ("Circuit Court") for one count of robbery and one count of

malicious wounding. Respondent has filed its Second Motion to Dismiss (ECF No. 17) and filed

the appropriate *Roseboro*[1] notice (ECF No. 19). Fenner has responded. (ECF No. 21.) For the

reasons set forth below, the Second Motion to Dismiss will be GRANTED.

## I.   PROCEDURAL HISTORY

After pleading guilty to one count of robbery and one count of malicious wounding, the

Circuit Court sentenced Fenner to an active term of imprisonment of five years on the robbery

count and fifteen years on the malicious wounding count. *See Commonwealth v. Fenner*,

Nos. CR10003122–00 and CR10003122–01, at 1–2 (Va. Cir. Ct. Jan. 28, 2011). Fenner filed

two motions to reconsider his sentence that the Circuit Court denied. *See Commonwealth v.*

*Fenner*, Nos. CR10003122–00 and CR10003122–01, at 1 (Va. Cir. Ct. Mar. 30, 2011); *id.* at 1

(Va. Cir. Ct. July 6, 2011). On April 27, 2012, the Circuit Court granted Fenner's third

reconsideration motion and modified his sentence on the malicious wounding conviction to an

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

active term of thirteen years of imprisonment. *See Commonwealth v. Fenner,*

Nos. CR10003122–00 and CR10003122–01, at 1–2 (Va. Cir. Ct. Aug. 1, 2012). Fenner filed no

appeal.

      Thereafter, Fenner filed a petition for a writ of habeas corpus with the Supreme Court of

Virginia raising the identical claim for relief as in the instant § 2254 Petition.[2]  On February 8,

2013, the Supreme Court of Virginia found that Fenner had defaulted his claim citing *Henry v.*

*Warden, Riverside Reg'l Jail,* 576 S.E.2d 495 (Va. 2003). *Fenner v. Dir. of the Dep't of Corr.,*

No. 122078, at 1 (Va. Feb. 8, 2013).

      In his § 2254 Petition, Fenner demands relief upon the following ground:

> A.    "The Virginia Code of law for malicious wounding says that the offender
> has to have the 'intent to maim, disfigure, disable or kill.'  The word
> 'intent' implies a type of premeditated mind-state which I am not guilty
> of."

(§ 2254 Pet. ¶ 14 (capitalization corrected).)[3]  In his response to the Motion to Dismiss, Fenner

also insisted that his plea was unknowingly and involuntarily made because of counsel's

defective advice to plead guilty. (Pet'r's Resp. 1–3, ECF No. 11.)  Thus, the Court construed

Fenner to raise the following additional ground for relief:

> B.    Fenner's guilty plea was not knowingly and voluntarily made because
> counsel failed to adequately explain the distinction between malicious
> wounding and unlawful wounding.  *(See id.).*

---

[2] Fenner's state habeas petition and his § 2254 Petition are identical filings.  Both forms
appear to be the standard form for filing a petition for writ of habeas corpus in the Circuit Court.
The Supreme Court of Virginia filed the habeas petition on November 21, 2012, and this Court
filed the petition on November 28, 2012.

[3] Section 18.2–51 of the Virginia Code states in relevant part:  "If any person maliciously
shoot, stab, cut or wound any person or by any means cause him bodily injury, with the intent to
maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony."  Va. Code Ann.
§ 18.2–51 (West 2014).

Because Respondent failed to demonstrate that Fenner's first claim was procedurally defaulted and failed to address Fenner's argument that he entered into his guilty plea based on the defective advice of counsel thereby rendering his plea unknowing and involuntary, the Court denied the Motion to Dismiss and ordered further briefing. *Fenner v. Virginia*, No. 3:12CV856, 2014 WL 106010, at *1–2 (E.D. Va. Jan. 6, 2014).

## II.  CLAIM A IS WAIVED

Fenner argues that insufficient evidence existed to convict him of malicious wounding because the statute requires the offender "to have the intent to maim, disfigure, disable or kill. The word intent implies a type of premeditated mind-state which I am not guilty of." (§ 2254 Pet. ¶ 14 (internal quotation marks omitted).)  Fenner apparently contends that:  (1) he lacked any intent to maim, disfigure, disable or kill; and (2) even if he acted with the intent to harm the victim, he acted with no malice.

"'[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges.'" *United States v. Martinez*, 424 F. App'x 208, 208 (4th Cir. 2011) (alterations in original) (quoting *United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)); *Peyton v. King*, 169 S.E.2d 569, 571 (Va. 1969) (holding that a voluntary and intelligent guilty plea waives all non-jurisdictional defenses antecedent to a guilty plea).  By pleading guilty, Fenner waived his right to contest the sufficiency of the evidence underlying his conviction for malicious wounding. *Martinez*, 424 F. App'x at 208 (citing *Willis*, 992 F.2d at 490).  Thus, Claim A is barred from review.  Fenner, however, suggests that his guilty plea was not knowingly and voluntarily made due to counsel's defective advice to plead guilty.  For the reasons set forth below, Fenner fails to demonstrate any prejudice from counsel's purported inaccurate advice.

3

### III.   PURPORTED INEFFECTIVE ASSISTANCE OF COUNSEL

#### A.   Applicable Law

To demonstrate ineffective assistance of counsel, a convicted defendant must show, first, that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of *Strickland*, the convicted defendant must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" *Burch v. Corcoran*, 273 F.3d 577, 588 (4th Cir. 2001) (quoting *Strickland*, 466 U.S. at 689). The prejudice component requires a convicted defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. *Id.* at 697.[4]

In the context of a guilty plea, the Supreme Court modified the second prong of *Strickland* to require a showing that "there is a reasonable probability that, but for counsel's errors, [petitioner] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). Any assertion by Fenner that he would not have pled guilty if he had received better assistance from counsel is not dispositive of the issue. *See United States v. Mora-Gomez*, 875 F. Supp. 1208, 1214 (E.D. Va. 1995). Rather, "[t]his is an objective inquiry and [highly] dependent on the likely outcome of a trial had the defendant not pleaded guilty." *Meyer v. Branker*, 506 F.3d 358, 369 (4th Cir. 2007) (internal citation omitted) (citing *Hill*, 474

---

[4] In *Strickland*, the Supreme Court made clear that no need exists for the Court to address counsel's purported deficiency, and that directive has particular relevance here. 466 U.S. at 694. By addressing only prejudice, the Court by no means finds that counsel performed deficiently.

4

U.S. at 59–60). The Court looks to all the facts and circumstances surrounding a petitioner's plea, including the likelihood of conviction and any potential sentencing benefit to pleading guilty. *See id.* at 369–70. In conducting the foregoing inquiry, the representations of the defendant, his lawyer, and the prosecutor during the plea proceedings, "as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). Thus, "[a]bsent clear and convincing evidence to the contrary, a defendant is bound by the representations he makes under oath during a plea colloquy." *Fields v. Att'y Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citations omitted).

As explained below, ultimately Fenner fails to demonstrate prejudice in light of uncontroverted evidence of his guilt of robbery, the compelling evidence of his guilt of malicious wounding, and the significant benefits he received from entering his guilty plea. Fenner cannot show that a reasonable defendant in his position would have insisted on proceeding to trial, but for counsel's alleged failure to adequately explain unlawful wounding. Prior to addressing that analysis, the Court finds it necessary to recite the circumstances pertaining to Fenner's guilty plea and his allegations with respect to Claim B.

### B.     Guilty Plea Proceedings and Factual Basis for the Plea

As part of his guilty plea, Fenner agreed that if the case had proceeded to trial the Commonwealth could have proven the following evidence of Fenner's guilt:

> On August 8, 2010 at 2020 hours, the victim, AV, met the defendant in the 300 block of Ashlawn [D]rive to purchase $1200.00 worth of marijuana. She knew the defendant as Rook. They had dealings twice in the past. Text messages were present on victim's phone from someone who identified himself as Rook selling marijuana to AV immediately prior to the shooting. The two met in the Race Coast gas [s]tation parking lot located on Fort Worth Avenue and walked down Little Creek Road to a "cut" on Ashlawn Drive. When they arrived alone in the "cut" the defendant pulled out a 380 handgun, pointed the gun to AV's head and said to give him her purse and all of the money. The defendant grabbed the

> victim's purse, shot her in the abdomen, and fled the scene on foot. He stole $1,360.00. AV was able to walk three blocks where she found someone who called 911. . . . The defendant was positively identified by the victim. He also has a tattoo that says "Rook."

Stipulation of Facts at 1, *Commonwealth v. Fenner*, Nos. CR10003122–00 and CR10003122–01 (Va. Cir. Ct. entered Oct. 27, 2010.) In the Plea Agreement, Fenner agreed that he was pleading guilty because he was in fact guilty of the charges of robbery and malicious wounding. Plea Agreement at 1, *Fenner*, Nos. CR10003122–00 and CR10003122–01 (Va. Cir. Ct. entered Oct. 27, 2010). The Commonwealth agreed that in exchange for Fenner's guilty plea, his maximum total sentence for the robbery and malicious wounding counts would be capped at twenty years of incarceration, instead of the maximum sentence of life that he could have received without the benefit of the Plea Agreement. Plea Agreement at 1, *Fenner*, Nos. CR10003122–00 and CR10003122–01.

In the Advice to Defendants Pleading Guilty, Fenner agreed that he fully understood the charges against him, had discussed the charges with his attorney, and understood the elements the Commonwealth needed to prove to find him guilty if he proceeded to trial. Advice to Defendant's Pleading Guilty ¶ 9, *Fenner*, Nos. CR10003122–00 and CR10003122–01. Fenner agreed that he had adequate time to discuss with his attorney possible defenses and whether or not to plead guilty. *Id.* ¶¶ 10–11. Fenner affirmed that he "decided for [himself] that [he] should plead guilty" and that he entered his plea freely and voluntarily because he was in fact guilty of the charges. *Id.* ¶¶ 11–12. Fenner averred that no one had threatened him or forced him to enter the guilty plea. *Id.* ¶ 13. Fenner also agreed that he understood the rights he was giving up by pleading guilty, including the right to defend himself and the right to appeal any decision by the Circuit Court. *Id.* ¶¶ 16–20.

During the plea hearing, Fenner swore that he read and understood, reviewed with counsel, initialed, and signed the Advice to Defendants Pleading Guilty. (Oct. 27, 2010 Tr. 4.) Fenner again acknowledged that he was pleading guilty because he was in fact guilty of the charges. (Oct. 27, 2010 Tr. 4.) Counsel averred that he was also satisfied that Fenner fully understood the guilty plea. (Oct. 27, 2010 Tr. 4.) Fenner agreed that he read and signed the Stipulation of Facts and agreed he understood what the Commonwealth's evidence would have been if he had gone to trial. (Oct. 27, 2010 Tr. 5.) The Circuit Court found Fenner's plea "given freely and voluntarily with a full understanding of its import" and accepted the plea. (Oct. 27, 2010 Tr. 5–6.)

### C. Fenner's Allegations in Claim B

Fenner contends that counsel failed to adequately explain the distinction between malicious wounding and unlawful wounding, and he discovered after pleading guilty that he lacked the requisite intent to harm the victim to sustain a conviction for malicious wounding. Fenner claims: "I signed a plea agreement stating that I was guilty of . . . malicious wounding and at the time I actually believed I was." (Pet'r's Resp. 1, ECF No. 11.) Fenner claims that he now realizes that he lacked the requisite intent for malicious wounding because he never intended to shoot the victim. (*Id.* at 2.) Fenner believes that "it would have been nigh impossible to prove the element of intent in a malicious charge against [him]." (*Id.*) Fenner agrees that the "Stipulation of Facts form I signed is correct in all that it says. The only problem is that it leaves out the way she was shot, which in turn makes the incident seem malicious." (*Id.*) Fenner argues that the he accidentally shot the victim and his "statement to Norfolk police on August 17, 2010 is a more accurate account of what transpired." (Pet'r's Resp. Second Mot. Dismiss 1, ECF No. 21.) He contends that he aimed the gun at the victim, but when he turned to run, the victim pushed the gun out of his hand and it accidentally discharged. (Pet'r's Resp. 2.)

7

Fenner states that counsel "NEVER mentioned the lesser charge of unlawful wounding" or discussed the requisite intent and any defenses. (Pet'r's Resp. Second Mot. Dismiss 1.)

As discussed below, Fenner fails to demonstrate prejudice from counsel's purported failure to fully explain the charge and his purportedly erroneous advice to plead guilty.

### D.   Fenner Fails to Demonstrate Prejudice

#### 1.   Counsel's Testimony

Counsel avers that on the first meeting with Fenner, he reviewed the charges with him and each of the elements that the Commonwealth would be required to prove including the element of malice. (Br. Supp. Second Mot. Dismiss Ex I, ¶¶ 2–3.) During the meeting, Fenner recounted the events leading to the charges, and Fenner told counsel that "the victim hit the gun and it went off." (*Id.* ¶ 3.) Counsel states: "I do not remember what took place after he told me of a possible 'accident defense', but I would think that I discussed the element of malice and a possible Unlawful Wounding outcome . . . ." (*Id.*) At some point after the Commonwealth offered Fenner the plea with the twenty-year capped sentence, counsel asked the Commonwealth to reduce the charge or lower the sentence cap. (*Id.* ¶ 4.) The Commonwealth refused to further reduce the charge or sentence. (*Id.*) Instead, the Commonwealth informed counsel that the facts of the case possibly warranted an enhancement to the original charges. (*Id.*)

Upon counsel's reasoned advice, Fenner pled guilty to malicious wounding in violation of section 18.2–51 of the Virginia Code. That section states, in pertinent part: "If any person maliciously shoot[s], stab[s], cut[s], or wound[s] any person or by any means cause[s] him bodily injury, with the intent to maim, disfigure, disable, or kill, he shall . . . be guilty of a Class 3 felony." Va. Code Ann. § 18.2–51 (West 2014).

8

### 2.   Fenner's Statement and the Victim's Testimony

In his statement to Norfolk Police, Fenner provided the following description of the

robbery and shooting:

> [Fenner]: I met with Ashley and we walked down Ashlawn. I was about to like
> rob her and she was kind of in shock and like she disbelieved me, like she didn't
> think I was doing it, like it was a joke and I asked her where the money was and
> she was still kind of shocked, just standing there, and then I asked her again and I
> seen [sic] her look at her purse.
>    So when I went to reach for her purse, the way her arm was, it kind of was
> in the way and she hit the gun and the gun went off. I didn't even know I shot her
> at first and I just took the purse.
>    . . . .
> [Investigator Freeman]: What exactly did you say to her?
> [Fenner]: I don't know. I don't remember. I just remember pulling a gun out and
> asking her for the money and she was like -- at first she was like, Are you serious?
> And I was telling her, Yeah, and she was saying something like get the gun out of
> my face and I was like, I said something to her and she backed up and when she
> backed up, that's when I asked her for the money again and I was like -- she ain't
> say nothing the first time I asked her. Then the second time I asked her I seen her
> look at her purse. So when I went to reach for her purse she moved. She hit the
> gun and it went off.
>    . . . .
> [Investigator Freeman]: So initially your intentions were just to rob her, not to
> shoot her?
> [Fenner]: I ain't have no intentions to shoot her. Like at the beginning, like when
> I pulled the gun out, if she would have just gave me the purse, none of that like
> really would have happened. I had no intentions of doing no type of harm to her.

(Aug. 17, 2010 Tr. 2, 6–7.)

The victim, however, refuted Fenner's assertion that the gun accidentally discharged as

they struggled over her purse. During the April 27, 2012 Motion for Reconsideration hearing,

the victim testified:

> [H]e took my purse and then shot me, when the gun was pointed at my head, he
> said "Give me your money. I don't want to shoot you."
>    So I said, "Fine. Take it," and I threw it at him. As he turned to run away,
> he shot me and then ran to leave me there.
>    The COURT: You say he turned?
>    THE WITNESS: I gave him the money and then he shot me.
>    THE COURT: Did you say he turned?

THE WITNESS: Like, threw the purse at him, shot and ran. I had gunpowder on my hand from where I had knocked the gun out of the way trying to block -- like trying to push it away.

The COURT: I'm sorry. When did you push the gun away?

THE WITNESS: Like, he pointed it at my head, said, Give me, you know, the money. You know, I don't want to shoot you, I'm not going to shoot you, I don't want to, but give me the money.

So I said fine. I threw it at him.

He had it in his hand, shot, ran. . . .

[COMMONWEALTH]: Was there any struggle over your purse?

[THE WITNESS]: He didn't touch it. I threw it at him.

. . . .

[THE WITNESS]: His hands never touched me.

[COMMONWEALTH]: Did he already have the purse in his hands when the gun went off?

[THE WITNESS]: Uh-huh.

. . . .

[COMMONWEALTH]: You said he ran; he didn't stay to help you?

[THE WITNESS]: No, not at all.

[COMMONWEALTH]: So supposedly this was an accident, but he left you there alone to die?

[THE WITNESS]: I don't know how much of an accident that really was.

. . . .

[THE WITNESS]: He told me to give him the money and he wouldn't shoot me. Why did he shoot me when I gave him they money then?

. . . .

(Apr. 27, 2012 Tr. 21–22, 25–26.) The victim further explained that Fenner initially held the gun less than a foot from her face, that she threw the purse at him and he caught it, and that Fenner "turned and run and shot me" but "was still facing me as he shot me." (Apr. 27, 2012 Tr. 35–37.) The victim stated that she heard the gun fire before her hand touched the gun. (Apr. 27, 2012 Tr. 39.)[5]

---

[5] The Court notes that during the motion for reconsideration hearing on April 17, 2012, after hearing the victim's testimony, the Circuit Court stated that "[t]he testimony here somewhat bears out your version of what occurred in regard to there being some contact with the victim's hand at the time the gunshot was fired . . . ." (April 17, 2012 Tr. 46–47.) The Circuit Court then reduced Fenner's sentence to eighteen years of incarceration. (April 17, 2012 Tr. 47.) While the Circuit Court's statement shows the victim's testimony influenced its determination of an appropriate sentence, it did not persuade the Circuit Court that evidence existed to revisit Fenner's guilty plea.

### 3.   Fenner Acted with the Requisite Intent to Wound the Victim

Fenner first argues that he lacked the requisite intent to harm the victim, thus he is not guilty of malicious or unlawful wounding.  "'[T]he specific intent to maim, etc., may be evidenced by words or inferred from acts and conduct under the rule that a person is presumed to have intended the natural and probable consequences of his voluntary act.'" *Fitzgerald v. Kelly*, No. 7:09–cv–00155, 2010 WL 725564, at *12 n.6 (W.D. Va. Feb. 26, 2010) (quoting *Fletcher v. Commonwealth*, 166 S.E. 2d 269, 272 (Va. 1969)).

Fenner fails to demonstrate any prejudice from counsel's purported failure to adequately explain the distinction between malicious wounding and unlawful wounding.  Fenner cannot establish that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59.  Compelling evidence existed that Fenner intended to maim, disfigure, disable or kill the victim despite his protestations to the contrary, thus a reasonable defendant in Fenner's position would not have insisted on going to trial.  Fenner led the unarmed victim to a remote area with the intent to rob her, possessed and brandished a firearm, purposely pointed the loaded firearm at her head despite no provocation by the victim, and demanded the victim give him her money.  Fenner protests that he had no intention of shooting the victim, but the "natural and probable consequences" of pointing the loaded firearm at the victim's head in order to rob her are that the gun might fire and injure the victim. *Adams v. Virginia*, 534 S.E.2d 347, 351 (Va. Ct. App. 2000) (explaining that "[t]he finder of fact may infer that [he] intends the natural and probable consequences of his acts") (alterations in original) (citations omitted) (internal quotation marks omitted); *Fletcher*, 166 S.E.2d at 272.  Fenner also immediately ran after shooting the victim in the chest without offering the victim any aid, actions "inconsistent with an accidental shooting." *Compton v. Virginia*, 250 S.E.2d 749, 758 (Va. 1979).

Moreover, both Fenner and victim testified that Fenner warned the victim to give him the money because "I don't want to shoot you." (Apr. 27, 2012 Tr. 21; *see* Aug. 17, 2010 Tr. 7.) Based on Fenner's statement alone, a reasonable juror could infer that Fenner intended to shoot the victim if she failed to give Fenner the money as quickly as Fenner wanted. While inconsistencies exist as to whether the victim threw her purse at Fenner or Fenner grabbed the purse, in the end, the evidence is more compelling that Fenner pointed the gun at the victim's head, was clearly ready to shoot the victim, shot the victim, and then left the scene. Fenner's actions support an inference that he possessed the requisite intent to maim, disfigure, disable or kill the victim.

Fenner also suggests that the victim should be faulted for the shooting because she refused to immediately give Fenner the money and tried to protect herself by hitting the gun with her hand. (*See* Aug. 17, 2010 Tr. 7.) However, the actions the victim took to resist being robbed or shot neither make the shooting accidental nor negate Fenner's intent to wound the victim. *See Barnes v. Commonwealth*, 360 S.E.2d 196, 200 (Va. 1987) (concluding "one who, armed with a deadly weapon, approaches others intending to rob them, will not be heard to assert that he was provoked by the resistance of his victims to his criminal enterprise"). The victim also testified that she heard the gun fire before her hand touched the gun, countering Fenner's argument that the gun fired accidentally and instead providing further evidence of Fenner's intent to maim, disable, disfigure or kill the victim. (Apr. 27, 2012 Tr. 39.) Finally, Fenner left the severely injured victim alone without offering her any aid.

### 4.      Fenner Acted with Malice

Fenner also argues that even if he acted with the intent to harm, he acted with no malice. "'Malice inheres in the doing of a wrongful act intentionally, or without just cause or excuse, or as the result of ill will. It may be directly evidenced by words, or inferred from acts and conduct

which necessarily result in injury.'" *Doss v. Commonwealth*, 479 S.E.2d 92, 95–96 (Va. Ct.

App. 1996) (quoting *Hernandez v. Commonwealth*, 426 S.E.2d 137, 140 (Va. Ct. App. 1993)).

Moreover, "'[i]mplied malice exists when any purposeful, cruel act is committed by one

individual against another without any, or without great provocation . . . .'" *Id.* (omission in

original) (quoting *Pugh v. Commonwealth*, 292 S.E.2d 339, 341 (Va. 1982)). "Malice [may] be

inferred from the deliberate use of a deadly weapon." *Perricllia v. Commonwealth*, 326 S.E.2d

679, 683 (Va. 1985) (citation omitted). Here, Fenner's actions and conduct prior to, during, and

after the shooting permit an inference that he acted with malice.

      The victim testified that Fenner purposely pointed a loaded firearm at the victim's head

without any provocation by the victim, creating a presumption of malice. *Id.*; *Compton*, 250

S.E.2d at 758. Fenner ordered the victim to give him her money and stated that he did not want

to shoot her. Despite his statement, even Fenner's testimony establishes that Fenner maliciously

shot the victim after he obtained the money. Fenner then left the severely injured victim alone

without providing her with any aid. Fenner's purposeful, cruel actions exhibited "ill will

sufficient to constitute malice." *Long v. Commonwealth*, 379 S.E.2d 473, 476 (Va. Ct. App.

1989).

      Based upon Fenner's actions and conduct, ample evidence existed that Fenner

maliciously shot the victim with the intent to maim, disfigure, disable or kill, thus, Fenner would

have most likely been convicted if he had not pled guilty. Certainly, he establishes no prejudice.

### 5.    Fenner's Plea Reduced His Exposure to a More Severe Sentence

      Fenner fails to demonstrate that "there is a reasonable probability that, but for counsel's

errors, [he] would have not pleaded guilty and would have insisted on going to trial." *Hill*, 474

U.S. at 59. Fenner faced a maximum sentence of life in prison and a minimum sentence of five

years for the robbery count, *see* Va. Code Ann. § 18.2–58, and a maximum sentence of twenty

years and a minimum sentence of five years for the malicious wounding count, *see* Va. Code Ann. §§ 18.2–10, 18.2–51.[6] In exchange for his guilty plea, the Commonwealth agreed to cap Fenner's sentence for both the robbery and malicious wounding counts at twenty years of incarceration.  Plea Agreement at 1, *Fenner*, Nos. CR10003122–00 and CR10003122–01.  Had Fenner not pled guilty, he faced a much greater sentencing exposure for the two counts. Additionally, if Fenner had not accepted the guilty plea, a reasonable probability existed that the Commonwealth may have sought enhanced charges.[7]  (*See* Br. Supp. Second Mot. Dismiss Ex. I, ¶ 4.)

　　　In light of the uncontroverted evidence of his guilt of robbery, the compelling evidence of his guilt of malicious wounding, and the significant benefits he received from entering his guilty plea, Fenner cannot show that a reasonable defendant in his position would have insisted on proceeding to trial but for counsel's failure to explain unlawful wounding.  Accordingly, Fenner fails to demonstrate prejudice from counsel's actions.  Claim B will be DISMISSED.

---

[6] Unlawful wounding carries a sentence of one to five years.  Va. Code Ann. § 18.2–10.

[7] Counsel averred that the Commonwealth informed him prior to Fenner pleading guilty that the facts of the case possibly warranted an enhancement to the original charges.  (Br. Supp. Second Mot. Dismiss Ex. I, ¶ 4.)  Based on the facts of the case, the Commonwealth likely meant an enhancement from the malicious wounding charge to an aggravated malicious wounding charge, thereby increasing Fenner's sentencing exposure for the count to a maximum sentence of life imprisonment and a minimum sentence of twenty years.  Va. Code Ann. §§ 18.2–10, 18.2–51.2A.  Aggravated malicious wounding requires severe injury of the victim and "permanent and significant physical impairment."  Va. Code Ann. § 18.2–51.2A.  Because Fenner pled guilty, the evidence of the victim's permanent injuries was not put into evidence.  Considering the limited record before this Court, it seems likely that the Commonwealth might have obtained a conviction on the aggravated charge.  Fenner shot the victim in close proximity, the bullet entered her chest nearly missing her heart, and Fenner admittedly "left [her] for dead."  (*See* Apr. 27, 2010 Tr. 5, 10, 25.)  The victim required emergency surgery and the placement of tubes in her chest.  (Br. Supp. Second Mot. Dismiss Ex. E, at 1.)  The victim had scars at the time of Fenner's guilty plea.  (*Id.*)

### III. CONCLUSION

The Motion to Dismiss (ECF No. 17) is GRANTED. Fenner's claims are dismissed and the 28 U.S.C. § 2254 petition will be DENIED. The action will be DISMISSED. An appeal may not be taken from the final order in a § 2254 proceeding unless a judge issues a certificate of appealability ("COA"). 28 U.S.C. § 2253(c)(1)(A). A COA will not issue unless a prisoner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This requirement is satisfied only when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)). Fenner fails to meet this standard.

Date: 7-15-14
Richmond, Virginia

/s/
James R. Spencer
Senior U. S. District Judge

15